Parsons, C. J.
In this case the plaintiff demands of the principals indemnity for his being their surety on certain custom-house bonds. The demand is admitted; but the trustee denies that he has in his hands any credits of the principals to satisfy this demand, and he has submitted to an examination on oath, in which he has declared that when the summons was served on him (May 18th, [ * 215 ] 1807), the principals were his debtors to a * large amount. From his answers to several interrogatories, and from the conclusions of law on the facts disclosed in those answers, the nature and state of his connection with the principals is manifest.
It appears that previous to January, 1807, the principals were largely indebted to the trustee, who then had an action pending against them to recover satisfaction for his debt, in which action the *163 goods and chattels of the principals were attached. At the same time the principals, with the plaintiff as their surety, had given three custom-house bonds not then payable.
By a statute of the United States, if the United States, or the surety having paid the bonds, had afterwards attached the same goods ¿nd chattels before they were sold on Richardson’s execution, his prior lien would be defeated to the amount of the bonds.
He then agreed with the principals, that if they would be defaulted, so that he might sell the goods attached on his execution, in consequence of which the surety would be deprived of his lien on the same goods, he, Ihe trustee, would pay the principals the amount of the duties as the bonds should severally become payable. The principals were accordingly defaulted, and a contract to pay them the amount of the same duties at the same instalments was executed by him.
Although it does not appear from the answers, or the contract, on what principle that specific sum was to be paid by a creditor to his debtors at those particular instalments, yet when we compare the sum, and the times of payment with the bonds, it is impossible for us to wink out of sight the real transaction. And we must conclude that the avowed intention was to furnish the principals with a fund for indemnifying the plaintiff as their surety in lieu of their personal estate, and to relieve the trustee from the possibility of a lien on that estate, by enabling him to sell it on execution before the bonds should be payable. This conclusion we are obliged to form, not only from the amount of the money contracted to be , * paid, from the times of payment, and from the benefits [ * 21© ] derived to the trustee from the default, but from the engagement of the creditor to pay them to his insolvent debtors, whose property attached was contemplated to be insufficient to pay the whole of the debt.
The contract not being payable to order, as the principals requested, and the bonds not being recited in the contract, is evidence of a secret intent of the trustee not to advance the money for the payment of the bonds in relief of the surety; but this intent was not known either by the principals or their surety, which latter might reasonably believe that the contract was a fund for his indemnity.
After this transaction, and after the trustee had got his judgment by the default of his principals, finding that a much less sum could be realized from the goods attached than he had expected, he proposed to the principals, that if they would pay or secure to be paid a certain portion of the judgment, he would take their own security for the balance, to be paid by instalments, and would discharge the execution, leaving the goods to be sold on other executions. This proposition was accepted and executed. At that time the money to *164 be paid on the first contract is not taken into the account by the parties, but the trustee still continued liable by his contract to pay the amount of the bonds as they should severally become payable.
Afterwards as the bonds fell due, the trustee endorsed the instalments, due by his own contract, on the notes of the principals, which he had received to balance his execution. But whether or not those notes were then payable does not appear; for he no where states what credit he gave the principals. He states that when the first instalment became payable, he endorsed it on one of the notes of the principals then due and held by him ; and that as the other instalments became payable he endorsed them on notes of the principals he then held.
[*217] * It also appears that when the bonds were payable, the contract was assigned by the principals to their sureties on the custom-house bonds. The question submitted to us is in substance, whether or not the trustee can defeat this assignment, by his endorsing the money, as it became payable by virtue of the contract, on the notes he held against the principals, under, all the circumstances of the case.
He declares that the assignees were not privy to his contracts with the assignors; that one of the assignees did not know the contents of this contract before the bonds were payable; that he had always intended to reserve to himself a right thus to discharge this contract, without advancing the money to pay the bonds ; and that he claims this right, because the goods attached fell short in value of his expectation. But he no where pretends that this intention of his was made known either to the principals or their sureties ; and he admits that it was once his intention to furnish the principals with the means of paying their custom-house bonds when due; because it had been represented by him (but by whom he does not mention) that thereby he might get half his debt; and he further admits that the principals would not consent to be defaulted, unless he would agree to pay them the amount of their custom-house bonds.
It is argued for the plaintiff that the trustee has not discharged himself for two reasons.
The first is, that it does not appear that, when the trustee endorsed the money due on his contract, he had any demand against the principals for moneys then payable.
This appears to be true, because a note may be due and not payable. And the reason is sufficient, if the fact must be considered as disclosed in the answers. For if, at the times of the endorse ments, the trustee then was obliged to pay moneys due to [*218] the principals, and the * payment could be enforced at law, without any legal right in the trustee to set off *165 against it any demands he had against them, this money is attached in the hands of the trustee. For the trustee may have given a long credit, and expressly agreed to pay what he owed on a short credit. Perhaps the trustee may in this case have used the word due as synonymous with payable, as in a popular, though not in a legal sense it is. Before we should decide against him on this ground, we should give him an opportunity to explain himself, if he could.
Blake, for the plaintiff.
Dexter &f Richardson, for the trustee.
The second, reason is, that it is fraudulent in the trustee, as against the surety, to discount this contract, made for the benefit of the surety, out of demands the trustee has against the principals without their consent.
Upon consideration we are satisfied with the validity of this reason. The open and avowed intent of the parties to the contract was to furnish the principals with a fund for discharging the customhouse bonds. The intent was further to relieve the sureties by the application of this fund; for the principals were then insolvent, and all their estate attached. This intent was executed for a reasonable consideration, as it related to the sureties; for the default would enable the trustee, and any other creditors of the principals having unsatisfied executions, to prevent the lien on their goods provided by law for the sureties. The attempt therefore of the trustee to defeat this apparent and reasonable intent of his contract, in consequence of his private intentions not disclosed, but secretly reserved, is a fraud on the sureties. If in this manner they are to pay the bonds, without benefit of the fund which the trustee had agreed to furnish for their relief, in consideration of which agreement they have lost their lien on the goods of their principals, they are manifestly defrauded. And it is very clear, if the endorsements made by the trustee were fraudulent against the sureties, he cannot avail himself of them.
*If the principals had agreed with the trustee other- [*219] wise to appropriate the money due by his contract, before the assignment, the trustee might be protected by this appropriation ; for as they held the fund, with the apparent consent of the trustee, for the benefit of the sureties, if the principals had concurred in withholding and otherwise appropriating it, probably the sureties would have no remedy, but a miserable one against their insolvent and disingenuous principals.
In this case the principals were not assenting to the endorsements, the sums endorsed have not been paid, and the trustee has not discharged himself on his examination.