## HAWES & *al. vs.* SMITH.

In the construction of contracts, the plain, ordinary and popular sense or meaning of the terms used, should prevail.

Where one was arrested at the suit of his creditor, and A. agreed in writing, in consideration that the creditor would discharge his debtor from the arrest, to pay him within 60 days, " all such sums of money as *may now be due and owing* to him" from said debtor, " whether on note or account;" the agreement was construed to embrace those debts only which were then actually *payable*.

THIS action, which was *assumpsit* upon the special contract of the defendant, hereafter stated, was submitted for the opinion of the Court upon the following agreed statement of facts.

On the 3d day of *October*, 1833, one *Greenlief C. Neally*, a debtor of the plaintiffs, being under arrest at their suit in *Bangor*, was discharged therefrom on his procuring the defendant to execute the following agreement in writing with the plaintiffs, *viz :*

" *Bangor, Oct.* 3d, 1833.

" Whereas *Greenlief C. Neally* has been arrested in this " place, at the suit of *Hawes & Lyon* of *Boston,* and is now un- " der arrest in the same suit, I hereby agree and promise the said " *Hawes & Lyon*, that if the said *Greenlief C. Neally*, is dis-

" charged from the same arrest and suffered to go at large, I will
" pay to said *Hawes & Lyon,* or to *William P. Fessenden* their
" attorney, in sixty days, all such sums of money as may now be
" due and owing to the said *Hawes & Lyon* from the said *Neally,*
" whether on note or account, and also the costs of said suit, in
" sixty days from the date hereof.          *Samuel Smith.*"

At the time of the execution of this contract, the plaintiffs
held three notes against *Neally* which had become *payable,* and
an account for goods sold, and four other notes which did not be-
come payable until after that time.    The deposition of one *Ran-
ney* in relation to the account, and the length of credit given, was
made a part of the case.

The plaintiffs claimed to recover the amount of all that *Neally*
owed them on the day the contract was made, whether it had
become *payable* or not, which the defendant resisted.

Upon these facts, the Court were to render such judgment, as
in their opinion should be conformable to the law of the case.

*W. P. Fessenden,* argued for the plaintiffs, citing the following
authorities : *McCarty* v. *Barrow,* 7 *East,* 436 ; 4 *Peters,* 436 ;
*Wentworth* v. *Whittemore,* 1 *Mass.* 473 ; *Frothingham* v. *Ha-
ley,* 3 *Mass.* 70 ; *Davis* v. *Ham,* 3 *Mass.* 33; *Willard* v. *Sheafe
& Tr.* 4 *Mass.* 236 ; *Wood* v. *Patridge,* 11 *Mass.* 493 ; *Say-
ward* v. *Drew,* 6 *Greenl.* 263 ; *Grenough* v. *Walker,* 5 *Mass.*
217.

*Rogers,* for the defendant.

PARRIS J. — In giving a construction to this contract it is pro-
per to take into consideration the situation of all the parties at
the time it was entered into.    The promise was made for the
benefit of *Neally* and to procure his release from arrest.

The introduction to the contract shows that this was the con-
sideration of the promise ; and this mode was adopted to effect
the object rather than the usual course of taking bail for appear-
ance.    By procuring bail *Neally* would have been entitled to
liberation, and the responsibility of the bail would be satisfied by
producing the debtor to the officer holding the execution.

The suit was commenced on such notes and demands only as
were then payable, and judgment could be recovered for nothing

more, so that the creditor could, by law, hold *Neally* no longer than he procured bail for his appearance, and after waiting until court for judgment, could recover nothing more than was payable when his suit was commenced ; — and on producing the debtor in the lifetime of the execution, which would extend to ninety days, or on payment of the amount of the execution, the bail would be wholly discharged. This was the extent of the creditor's power on the one hand, and the debtor's rights on the other.

Instead of becoming bail for *Neally's* appearance, the defendant assumed the payment of the debt in sixty days, which was sooner than it could have been recovered of the debtor if the action had been prosecuted.

It is contended, that the defendant not only assumed the debt on which the suit was commenced, but that he undertook to pay, in sixty days, all the other debts which *Neally* owed the plaintiff, although not payable when the action was commenced, and some of them not even payable at the expiration of the sixty days ; that is, that, in consideration that the plaintiff would release *Neally* from arrest on notes that were then payable, and which he could not avoid doing on the furnishing of bail, *Smith* undertook to pay, not only the debt sued for, but other debts, even before they became payable.

If such was the understanding of the parties, if they made such a contract, they are to be held to it. It is our business to enforce, not to make, contracts for parties. But it is not for us to enforce as an agreement what the parties never assented to.

It is admitted that the language of the promise, according to its strict legal import, might embrace all that is contended for by the plaintiff. But cases often arise where the meaning of language is to be accommodated to the situation and circumstances of the parties using it. As said by the court, in *Sumner* v. *Williams*, 8 *Mass.* 214, nothing can be more equitable than that the situation of the parties, the subject matter of their transactions and the whole language of their instruments should have operation in settling the legal effect of their contract ;— and it would be a disgrace to any system of jurisprudence to permit one party

to catch another, contrary to the spirit of their contract, by a form of words, which perhaps neither party understood.

The maxims for the exposition of contracts are simple and consistent, and well calculated to effect their sole object; namely, to do justice between the parties by enforcing a performance of their agreement, according to the sense in which they mutually understood it at the time it was made; — and all latitude of construction must submit to this restriction, that the words and language of the instrument bear the sense intended to be put upon them. *Chitty on Con.* 19.

The plain, ordinary and popular sense or meaning of the terms adopted by the parties, shall prevail. *Ibid,* 20. It was said by the court, in *McWilliams* v. *Martin,* 12 *Serg. & Rawle,* 269, that it never was a rule of construction, that the words in a contract were to be taken in their technical sense, but according to their proper and most known signification, that which is most in use. The necessary use of particular technical expression is chiefly regarded in the sense of law terms. *Lord Mansfield* said, in *Goodtitle* v. *Bailey, Cowp.* 600, the rules laid down in respect to the construction of contracts are founded in law, reason and common sense ; that they shall operate according to the intention of the parties, if by law they may ; and if they cannot operate in one form they shall operate in that which by law will effectuate the intention.

In the construction of agreements the intention of the parties is principally to be attended to. *Buller J.* in *Browning* v. *Wright,* 2 *Bos. & Pull.* 26.

We can have no doubt from the situation, circumstances and objects of the parties, as they are developed in their written agreement, that the phraseology, " all such sums of money as may now be due and owing, whether on note or account," was supposed and intended to mean and include only such as were then payable, and for the recovery of which *Neally* had been arrested, and this, no doubt, would be considered the popular meaning of such language, although we admit that the strict technical or legal signification of the terms may be different. The Counsel for the plaintiff admits that due is synonymous with pay-

able in a popular but not in a legal sense, and he is supported by the authorities which he has cited, especially *Greenough* v. *Walker*, 5 *Mass.* 214, where the court say, a note may be due and not payable. Numerous instances might, however, be referred to where courts, even, have used the term due as synonymous with payable. In *Kingman* v. *Pierce*, 17 *Mass.* 247, where the principle was settled that the promissor had no legal right to discharge his note by payment until it became payable, the court say, " according to the evidence reported, the note was not *due* when it was paid to the plaintiff's son. The defendant came unlawfully to the possession of it, for he had no right to it until it became *due*." In *Saunders* v. *Frost*, 5 *Pick.* 267, the court say, " the principal question is as to the effect of the tender. The tender can be considered valid only in relation to the interest and the amount of the note which was *due*, for the mortgagee could not be compelled to receive payment until it became *due*. A great number of similar instances might be mentioned, where courts of the highest respectability have used the word *due* in the same sense as *payable*.

Is it matter of surprise then that others should so use it, especially those not familiar with the legal distinction, and who, probably, never heard or suspected that a note was considered due until it became payable.

When the popular meaning of a term becomes so general as to cause its introduction into the opinions and judgments of respectable judicial tribunals, it would have the semblance of severity not to permit it to be used in a similar manner in contracts, which those tribunals may be called upon to expound. We think that we are adhering to general established rules, which are among the maxims of the law, in deciding that the defendant is answerable only for such sums as were actually payable by *Neally* to the plaintiff on the third of *October*, 1833. — *Verba intentioni et non a contra debent inservire* has become a maxim, which *Coke* says, " is to be of all men confessed and granted, without proof, argument or discourse."

The delivery of the articles charged in the account, is proved by *Ranney*, and he testifies that when credit was given the sales

were usually settled by notes.  There is no proof that any credit was in fact given on the goods, but the contrary is to be inferred from *Ranney's* testimony, which is the only evidence in the case, except what is derived from witnesses residing at a distance, who testify as to the usual credit for similar purchases.  The positive, uncontradicted testimony of *Ranney* must be decisive of the question ; — and, as no credit is proved to have been given, the account was payable on the 3d of *October*, 1833, and is to be included in the judgment.